# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

REZA ZAVVAR,

    Petitioner,

    v.

NIKITA SCOTT,
*in her official capacity as*
*Director of the Baltimore Field Office,*
*U.S. Immigration and Customs Enforcement*,
KRISTI NOEM,
*in her official capacity as*
*Secretary of Homeland Security*,
and
PAM BONDI, *in her official capacity as*
*Attorney General of the United States*,

    Respondents.

Civil Action No. 25-2104-TDC

## MEMORANDUM OPINION

Petitioner Reza Zavvar, who is currently in immigration detention, has filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 against Respondents Nikita Scott, the Director of the Baltimore Field Office of United States Immigration and Customs Enforcement ("ICE"); Secretary of Homeland Security Kristi Noem; and Attorney General Pam Bondi. In the Petition, Zavvar seeks immediate release on the grounds that his detention violates the Due Process Clause of the Fifth Amendment to the United States Constitution and the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101–1537. Zavvar also asserts that Respondents' failure to provide him with notice and an opportunity to be heard to contest his removal to a nation that is not his country of origin violates the Due Process Clause, the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551–559, 701–706, and the INA and its implementing regulations. After

briefing, the Court held an evidentiary hearing on the Petition on August 27, 2025. For the reasons set forth below, the Petition will be GRANTED.

## BACKGROUND

Zavvar, who is 52 years old, is a native and citizen of Iran. He first entered the United States 40 years ago, at the age of 12, and was subsequently granted asylum and permanent residence. In 2004, the United States Department of Homeland Security ("DHS") initiated removal proceedings against him based on two misdemeanor convictions for possession of marijuana that he sustained in 1994 and 1998, respectively. He was not detained during the removal proceedings. On October 11, 2007, an immigration judge ordered Zavvar's removal but granted him withholding of removal pursuant to 8 U.S.C. § 1231(b)(3)(A), which barred his removal to Iran because his "life or freedom would be threatened in that country" for one of the enumerated reasons set forth in that statute. *Id.* Zavvar asserts that in the nearly 18 years since his removal order became final, Respondents have not sought to effectuate his removal to any country, and he has been free from custody as he resided in Maryland with his family. Zavvar further asserts that, during this period, he has remained employed and has avoided any type of "criminal entanglement." Reply at 3, ECF No. 17.

On June 28, 2025, while Zavvar was walking his dog outside his home, ICE officers arrested him and took him into custody. Zavvar was transported to ICE's holding cell in Baltimore, Maryland before he was relocated to the Port Isabel Service Detention Center in Los Fresnos, Texas. Zavvar asserts that, at the time he was detained, he was not provided with notice of what ICE intended to do with him, including whether it was seeking to remove him to a third country. Respondents have submitted a notice dated July 1, 2025, three days after his detention, which states that ICE "intends to remove" Zavvar to Australia, and a second notice with the same date

stating that ICE "intends to remove" Zavvar to Romania. Notices of Removal, Answer Exs. B, C, ECF Nos. 13-2, 13-3. Zavvar disputes receiving these documents. Zavvar fears that he may be removed to a third country without being provided with notice of the country of removal and an opportunity to contest such a removal on the basis of a fear or likelihood of persecution in such a third country.

On June 30, 2025, while still detained in Maryland, Zavvar filed the original Petition for a Writ of Habeas Corpus and, later that day, filed the presently operative corrected Petition ("the Petition"), which differs only in that it includes his alien registration number.

On August 27, 2025, the Court held an evidentiary hearing, in advance of which it had directed the presentation of "documentary evidence and the testimony of a witness with direct knowledge of (1) whether Australia and Romania are currently accepting third country removals; and (2) the specific actions being taken to secure approval for and effectuate Zavvar's removal to Australia and Romania." Order at 2, ECF No. 22. At the hearing, Respondents presented two Forms I-241, entitled "Request for Acceptance of Alien" and dated June 28, 2025, through which ICE made requests to the Embassy of Australia and the Embassy of Romania for those nations to agree to the removal of Zavvar to those countries. Resp. Hrg. Exs. 2, 3. These forms state that Zavvar is a citizen of Iran, that he has a prior conviction for possession of marijuana, that he has no prior residence in either Australia or Romania, and that he has no relatives or friends in either Australia or Romania.

Respondents also presented the testimony of Melanie White, the Assistant Field Office Director for ICE's Baltimore Field Office. White testified that ICE has not yet received responses from Australia or Romania regarding Zavvar's removal. In addition, White testified that, while Zavvar's release following the issuance of his removal order in October 2007 made his removal

3

unlikely at the time, circumstances could have since changed so as to render his removal reasonably foreseeable today. At the same time, however, White, who has worked for ICE for over 20 years, was unaware of any agreements that have been reached between the United States and either Australia or Romania that would support such a change in the likelihood of Zavvar's removal. Moreover, White was not aware of any occasions on which Australia or Romania has accepted third-country removals from the United States generally or of Iranian nationals specifically, or any instances where, as here, a noncitizen with no ties to Australia or Romania was nevertheless removed to one of those countries.

## DISCUSSION

Pursuant to 28 U.S.C. § 2241, a district court may grant a petition for a writ of habeas corpus if a prisoner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). In the Petition, Zavvar argues that (1) his detention violates the the INA on the grounds that it is not reasonably foreseeable that he will be removed to Australia, Romania, or any other country, in violation of 8 U.S.C. § 1231(a)(6) as interpreted by *Zadvydas v. Davis*, 533 U.S. 678 (2001); and (2) Respondents are violating his due process rights, the APA, and the INA and its implementing regulations because they have failed to provide him with notice of removal to a third country and an opportunity to contest such a removal by presenting a fear-based claim before an immigration judge. As relief, he seeks: (1) release from ICE detention; and (2) an order directing that he receive notice of any removal to a third country prior to removal and an opportunity to contest such a removal.

## I.      *D.V.D. v. U.S. Department of Homeland Security*

In their Answer, as a threshold issue, Respondents argue that this case should be dismissed or stayed in light of *D.V.D. v. U.S. Department of Homeland Security*, No. 25-10676-BEM, 2025 WL 1142968 (D. Mass. Apr. 18, 2025), a case in which the court granted a preliminary injunction

4

relating to a certified class of individuals who are presently subject to a final notice of removal and who DHS "has deported or will deport on or after February 18, 2025, to a country (a) not previously designated as the country or alternative country of removal, and (b) not identified in writing in the prior proceedings as a country to which the individual would be removed." *Id.* at *11, *25. The preliminary injunction directed that certain procedural steps occur before any removal of a class member to a third country. *Id.* at *24. Since the filing of the Petition, however, that preliminary injunction has been stayed by the United States Supreme Court. *See Dep't of Homeland Security v. D.V.D.*, 145 S. Ct. 2153, 2153 (2025). Moreover, where Zavvar primarily seeks relief from detention pending any removal, he seeks relief that is not sought on behalf of the class in *D.V.D.* Accordingly, the Court will not dismiss or stay the Petition as to the request for relief from detention.

At the same time, Zavvar also seeks an order directing Respondents to provide him with notice and an opportunity to contest removal to a third country on the basis of a fear or likelihood of persecution in such a third country. The Court finds, and Zavvar acknowledges, that as to that claim, he is a member of the *D.V.D.* class and seeks relief comparable to that sought in *D.V.D. See D.V.D.*, 2025 WL 1142968, at *24 (enjoining the Government from removing noncitizens to third-party countries without providing various procedural safeguards, including a "meaningful opportunity for the alien to raise a fear of return for eligibility for [Convention Against Torture ("CAT")] protections"). Where Respondents seek dismissal or a stay of the Petition as to this claim, and where Zavvar does not oppose a stay of that claim, the Court will stay the Petition as to the claim seeking an order requiring that he receive notice and an opportunity to contest any removal to a third country on the basis of a fear or likelihood of persecution in such a third country.

## II.    8 U.S.C. § 1252(g)

In the Answer, Respondents also argue that "[t]o the extent Petitioner seeks an order staying ICE's effectuation of Petitioner's removal order," this Court lacks jurisdiction to offer such relief pursuant to 8 U.S.C. § 1252(g). Ans. at 16, ECF No. 13. That provision provides in relevant part:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g). With the *D.V.D.*-related claim now stayed, the Petition does not seek a stay of the execution of Zavvar's removal but rather challenges the legality of Zavvar's detention pending the execution of his removal order. This Court has jurisdiction to evaluate this challenge. *See Zadvydas*, 533 U.S. at 688 (noting that when a petitioner challenges "the extent of the Attorney General's authority under the post-removal-period detention statute," § 2241 habeas proceedings are available for "statutory and constitutional challenges" to such detention).

## III.    Unlawful Detention Claim

Zavvar asserts that his ongoing detention is unlawful because there is no significant likelihood that he will be removed in the reasonably foreseeable future, such that his detention violates 8 U.S.C. § 1231(a)(6) as interpreted by *Zadvydas*.

### A.    Legal Framework

As an initial matter, the parties agree that Zavvar, who was issued a final order of removal in 2007 but also received withholding of removal, is detained pursuant to 8 U.S.C. § 1231(a). That provision establishes that, upon the issuance of a final order of removal to a noncitizen, the individual shall be removed "within a period of 90 days," a time period referred to in the statute

6

as the "removal period," and shall be detained during the removal period. *See* 8 U.S.C. § 1231(a)(1)(A) ("Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')."); 8 U.S.C. § 1231(a)(2)(A) ("During the removal period, the Attorney General shall detain the alien."). Next, § 1231(a) requires that noncitizens who do not leave the United States or are not removed within the removal period, "pending removal, shall be subject to supervision under regulations prescribed by the Attorney General." 8 U.S.C. § 1231(a)(3). Certain noncitizens, however, including those who are removable based on certain criminal convictions, may be detained beyond the removal period. *See* 8 U.S.C. § 1231(a)(6) ("An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period . . . ."). If released, a noncitizen belonging to a category described in 8 U.S.C. § 1231(a)(6) also "shall be subject to the terms of supervision" in [8 U.S.C. § 1231(a)(3)]." 8 U.S.C. § 1231(a)(6). Respondents assert, and Zavvar does not dispute, that his prior convictions for possession of marijuana render him removable under 8 U.S.C. § 1227(a)(2)(A)(i), so Zavvar may be detained following the removal period pursuant to 8 U.S.C. § 1231(a)(6).

In *Zadvydas*, the Supreme Court considered whether 8 U.S.C. § 1231(a)(6) authorizes detention of a noncitizen subject to a removal order "*indefinitely* beyond the removal period or only for a period *reasonably necessary* to secure the alien's removal." *Zadvydas*, 533 U.S. at 682. In that case, the petitioners had received removal orders but were detained past their respective removal periods in part because their native countries and other countries with which they had

7

some familial ties had refused to accept them. *See id.* at 684–86. Recognizing the "serious constitutional problem arising out of a statute that, in these circumstances, permits an indefinite, perhaps permanent, deprivation of human liberty," *id.* at 692, the Supreme Court held that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. The Court thus directed federal habeas courts to determine "whether the detention in question exceeds a period reasonably necessary to secure removal" and to "measure reasonableness primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal." *Id.* If removal is not "reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." *Id.* at 699–700.

The Court acknowledged, however, that "review must take appropriate account of the greater immigration-related expertise of the Executive Branch" and that doing so "will often call for difficult judgments." *Id.* at 700. To limit "the occasions when courts will need to make" such judgments, the Court recognized a "presumptively reasonable period of detention." *Id.* After noting that Congress likely did not conclude that the 90-day removal period it established in 8 U.S.C. § 1231(a)(1) was sufficient to accomplish "all reasonably foreseeable removals," the Court established that the "presumptively reasonable period of detention" is six months, and stated that, after that period, once a noncitizen "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 701.

8

**B.    The Six-Month Period**

Relying on *Zadvydas*, Zavvar first argues that this six-month period has already expired because the removal period expired 90 days after the issuance of his removal order on October 11, 2007, or on or about January 9, 2008, and the remainder of the six-month period consists of the following 90 days, such that this time period expired on or about April 8, 2008. Respondents, while agreeing that the statutory removal period expired 90 days after the issuance of the removal order, argue that the six-month period contemplated by *Zadvydas* applies only to time periods in which a noncitizen is actually in immigration detention and thus did not begin to run until June 28, 2025, when Zavvar was detained for the first time since the issuance of his removal order. Respondents further argue that because that six-month period has not elapsed, Zavvar has no basis upon which to challenge his detention.

The question of whether the six-month period has expired is not clearly answered by *Zadvydas*. Where the *Zadvydas* Court referenced the 90-day statutory removal period in its discussion of the six-month period, it is clear that the six months includes the original 90-day period of detention, plus an additional 90 days. *See Zadvydas*, 533 U.S. at 701. *Zadvydas*, however, does not state whether the removal period, or the additional 90 days, counts toward the six months only when the noncitizen is actually detained. Though *Zadvydas* refers to this time period as a "period of detention," suggesting that only time in detention counts toward that period, *Zadvydas* contemplated only the situation in which a noncitizen was continuously detained from the issuance of the removal order while efforts to execute the removal were ongoing, *see id.* at 701, and did not directly address the situation presented here, where a noncitizen was not detained upon the issuance of the removal order, remained on release for over 17 years, and only then was subjected to post-removal order detention for the first time. This distinction is significant because

9

*Zadvydas* appears to have sought to balance the length of time a noncitizen would be held in detention against the need to afford the Government some time immediately following the issuance of the removal order to make and execute arrangements for removal. *See id.* Because some if not most of those arrangements, such as securing approval from a foreign country to remove an individual to that nation, can likely be pursued even while the noncitizen is on release, that balance may well differ in circumstances where, before the period of detention began, the Government had a period of time—indeed, in this case, over 17 years—to make the arrangements for removal. Thus, there is, at a minimum, a reasonable argument that the six-month period runs continuously from the beginning of the removal period, even if the noncitizen is not detained throughout that period. *See Tadros v. Noem*, No. 25-4108-EP, 2025 WL 1678501, at *3 (D.N.J. June 13, 2025) (finding that the removal period began upon the affirmance of the removal order even though the petitioner was immediately released, rather than when he was detained 16 years later, and rejecting the argument that the petitioner could not obtain habeas relief because he had not yet been in detention for six months); *Cordon-Salguero v. Noem*, No. 25-1626-GLR, Mot. Hr'g Tr. at 33–34 (D. Md. June 23, 2025) (Dkt. No. 21) (finding that the six-month period was not tolled upon release from detention); *Farez-Espinoza v. Chertoff*, 600 F. Supp. 2d 488, 500 (S.D.N.Y. 2009) (concluding that, where the Government was aware of a noncitizen's address but failed to pursue her removal until more than 15 months after the removal order was entered, "the removal period, as well as any presumptively reasonabl[e] six-month period of removal to which the Government may have been entitled" had expired six months after the entry of the removal order). Moreover, even if the six-month period includes only time spent in detention, the Court cannot readily conclude that the presumptive reasonableness of that period of detention necessarily applies when that period does not run continuously from the beginning of the removal period, such that the

10

Government could have taken steps toward effectuating removal during periods of release. The Court therefore will not, as Respondents request, dismiss the Petition solely on the basis that Zavvar has not been in detention for at least six months.

Further, even if *Zadvydas*'s "presumptively reasonable" six-month period of detention accrues only when a noncitizen is in detention, and even if it remains at six months even though, as here, Respondents had a substantial pre-detention opportunity to arrange Zavvar's removal, the Court does not find that the Petition must be dismissed because, as Zavvar argues, the presumption is rebuttable. As discussed above, in holding that 8 U.S.C. § 1231(a)(6) is subject to a due process limitation against indefinite detention, the Supreme Court in *Zadvydas* tasked lower courts with determining "whether the detention in question exceeds a period reasonably necessary to secure removal." *Zadvydas*, 533 U.S. at 699. Specifically, courts must:

> measure reasonableness primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal. Thus, if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute.

*Id.* at 699–700. It was only after mandating this general inquiry that the Supreme Court recognized the "presumptively reasonable period of detention" of six months. *Id.* at 701. But a presumption "is just that—a presumption." *Clark v. Martinez*, 543 U.S. 371, 387 (2005) (O'Connor, J., concurring) (discussing the six-month presumption in *Zadvydas*). Indeed, in *Zadvydas*, the Court noted that such presumptions are intended to "guide lower court determinations," without stating that they mandate a particular result or establish a bright-line rule. *Zadvydas*, 533 U.S. at 701. Notably, the Court specifically analogized the six-month presumption to the presumption established in *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991), which was rebuttable. *See Zadvydas*, 533 U.S. at 701; *Cnty. of Riverside*, 500 U.S. at 56 (in establishing a presumption that a probable cause determination made within 48 hours of an arrest is constitutionally reasonable,

11

stating that this "is not to say that the probable cause determination in a particular case passes constitutional muster simply because it is provided within 48 hours").

Moreover, a determination that the presumption that six months of post-removal order detention is reasonable cannot be rebutted would render *Zadvydas* internally inconsistent in at least two ways. First, the Government would be permitted to detain noncitizens ordered removed for up to six months even when their removal is impossible. Such a result would run counter to the Supreme Court's admonition in *Zadvydas* that "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." *Zadvydas*, 533 U.S. at 699–700; *see also Clark*, 543 U.S. at 384 (stating that *Zadvydas* held that "detention cannot be continued once removal is no longer reasonably foreseeable").

Second, while the Supreme Court recognized the importance of granting "the Government appropriate leeway when its judgments rest upon foreign policy expertise," it rejected the argument that federal habeas courts must "accept the Government's view about whether the implicit statutory limitation is satisfied in a particular case, conducting little or no independent review of the matter" and found that courts can consider Executive Branch views "without abdicating their legal responsibility to review the lawfulness of an alien's continued detention." *Zadvydas*, 533 U.S. at 699–700. An unrebuttable presumption that the six-month period of detention is constitutionally reasonable would undercut the judiciary's "legal responsibility" to conduct its own review. *Id.*

Notably, multiple courts have reached the same conclusion that the six-month presumption is rebuttable. *See, e.g., Munoz-Saucedo v. Pittman*, No. 25-2258-CPO, 2025 WL 1750346, at *5–6 (D.N.J. June 24, 2025) (collecting cases); *Ali v. Dep't of Homeland Security*, 451 F. Supp. 3d 703, 707 (S.D. Tex. 2020) (holding that the "six-month presumption is not a bright line" and that *Zadvydas* "did not require a detainee to remain in detention for six months . . . before a habeas

12

court could find that the detention is unconstitutional"); *Hoang Trinh v. Homan*, 333 F. Supp. 3d 984, 994 (C.D. Cal. 2018) ("The Supreme Court in *Zadvydas* outlined a 'guide' for approaching these detention challenges . . . not a prohibition on claims challenging detention less than six months." (quoting *Zadvydas*, 533 U.S. at 700–01)); *Cesar v. Achim*, 542 F. Supp. 2d 897, 905 (E.D. Wis. 2008) (concluding that "while detention pursuant to § 1231(a)(6) for up to six months is presumptively lawful, an alien may still state a claim for and demonstrate a constitutional violation within the six-month window"); *Medina v. Noem*, No. 25-1768-ABA, 2025 WL 2306274, at *6 (D. Md. Aug. 11, 2025) (noting that "what *Zadvydas* did make clear was that it was adopting a presumption—not a conclusive bar to adjudication of whether continued detention is authorized that lifts only after six months have elapsed"); *see also Cordon-Salguero*, Mot. Hr'g Tr. at 33 (stating that the *Zadvydas* presumption is rebuttable).

Although other courts, including in cases cited by Respondents, have summarily found that a habeas petition filed before the six-month period had elapsed was premature, those courts did not directly address the question of whether the presumption is rebuttable, which may not have been presented to them. *See, e.g.*, *Rodriguez-Guardado v. Smith*, 271 F. Supp. 3d 331 (D. Mass. 2017), *Julce v. Smith*, No. 18-10163-FDS, 2018 WL 1083734, at *5 (D. Mass. Feb. 27, 2018); *Ghamelian v. Baker*, No. 25-2106-SAG, 2025 WL 2049981, at *4 (D. Md. July 22, 2025*); see also Farah v. Attorney General*, 12 F.4th 1312, 1332–33 (11th Cir. 2021) (finding that the petitioner's detention was not governed by 8 U.S.C. § 1231(a) because the final removal order had not yet been issued, then stating *in dicta* that once the removal period actually begins, "[i]f after six months he is still in custody" he could challenge his detention, which "until then" is "presumptively reasonable"). The Court therefore finds that they do not provide a basis to alter the Court's conclusion on this point.

Finally, even if the presumption is not rebuttable in the standard situation under which, as in *Zadvydas*, the six-month period consisted of continuous detention of the noncitizen beginning on the date of the removal order, it must be rebuttable when, as here, the noncitizen was not initially detained and there was thus a substantial pre-detention period during which Respondents could have arranged for the removal. As discussed above, under such circumstances, the amount of time reasonably necessary to make such arrangements likely differs. Indeed, courts considering similar facts to those present here have concluded that *Zadvydas* is distinguishable, such that the six-month presumptively reasonable period identified in *Zadvydas* does not outright preclude noncitizens from raising a challenge to their detention under 8 U.S.C. § 1231(a)(6) until they have been detained for six months. *See, e.g.*, *Nguyen v. Hyde*, No. 25-11470-MJJ, 2025 WL 1725791, at *3 (D. Mass. June 20, 2025) (concluding that the six-month presumptively reasonable period was not applicable in a case "about ICE's authority to re-detain [a noncitizen] after he was issued a final order of removal, detained, and subsequently released on an OSUP" rather than "ICE's authority to detain in the first place upon an issuance of a final order of removal as in *Zadvydas*"); *Ruiz Primero v. Mattivelo*, No. 25-11442-IT, 2025 WL 1899115, at *5 (D. Mass. July 9, 2025) (distinguishing *Zadvydas* as addressing the issue of indefinite detention rather than "an initial detention decision" and finding that the Government could not "rely on the presumptive period of permissible detention" established in *Zadvydas*); *see also Guillermo M. R. v. Kaiser*, No. 25-05436-RFL, 2025 WL 1983677, at *5 (N.D. Cal. July 17, 2025) ("*Zadvydas* provided no instruction for what process is necessary to protect non-citizens' liberty interest when the government seeks to return them to custody.").

The Court therefore finds that the fact that Zavvar has not yet been detained for six months does not preclude his argument that his detention is unlawful, both because the six-month

presumption does not necessarily control in cases in which the petitioner was not subject to continuous detention from the issuance of the removal order and because the six-month presumption is rebuttable. Where the Court finds that consideration of whether the presumption has been rebutted is sufficient to resolve the Petition, the Court will assume without deciding that the six-month presumptively reasonable period applies to the present facts.

### C.    Likelihood of Removal

Assuming that the six-month period applies and has not expired, such that Zavvar's detention is presumptively reasonable, Zavvar has the burden to rebut the presumption by showing that there "is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701; *see also Safari Club Int'l v. Zinke*, 878 F.3d 316, 328 (D.C. Cir. 2017) (stating that a presumption "is generally rebuttable by the presentation of contrary evidence"). Thus, within the six-month period, the Government has no burden to justify detention, and "presumption of reasonableness is the default," but it may be overcome by proof that "removal is not reasonably foreseeable." *Munoz-Saucedo*, 2025 WL 1750346, at *6; *Cesar*, 542 F. Supp. 2d at 903 (noting that within the six-month period, the detainee must prove the unreasonableness of detention, which is a "heavier" burden than applies "after six months [have] elapsed").

Petitioners rely on the following facts. First, unlike in *Zadvydas* itself, in which the petitioners were subject to final orders of removal and had no pending legal bar to removal, Zavvar has been granted withholding of removal as to Iran, the only country to which Zavvar has a claim to citizenship or legal immigration status. Accordingly, Zavvar cannot be removed to Iran without the lifting of the order providing for withholding of removal. *See* 8 C.F.R. § 1208.24(f). A grant of withholding of removal "substantially increases the difficulty of removing" an individual. *Munoz-Saucedo*, 2025 WL 1750346, at *6; *cf. Nadarajah v. Gonzales*, 443 F.3d 1069, 1081 (9th

Cir. 2006) (recognizing that a grant of CAT withholding of removal to a noncitizen "is a powerful indication of the improbability of his foreseeable removal, by any objective measure"). Notably, during the hearing, White testified that, at the time that such withholding was granted to Zavvar in October 2007, it was not likely that Zavvar would be removed, and Respondents acknowledged that it could be inferred that removal was not reasonably foreseeable at that time.

Second, for a period of over 17 years, until Zavvar was detained in June 2025, Respondents either made no efforts to remove him, or any such efforts were unsuccessful. Indeed, at the hearing, White stated that, as to Zavvar, efforts to consider a third-country removal and to effectuate such a removal should have begun at the time of the removal order, back in 2007. To the extent that no such efforts were made, it is thus reasonable to infer, based on the acknowledgment referenced above, that any such efforts likely would have been unsuccessful. Moreover, though White noted at the hearing that circumstances may change over time that could render a removal reasonably foreseeable, such as when new agreements are reached with foreign nations to accept third-country removals, White was not aware of any such agreements that had been reached with Australia or Romania.

Third, although Respondents have provided two Forms I-241, dated June 28, 2025, through which ICE requested that Australia and Romania accept Zavvar's removal to one of those countries, Zavvar has identified facts that substantially decrease the likelihood that such a removal will occur. Significantly, Zavvar "has never lived [in], has no family [in], nor has even visited" either Australia or Romania. Reply at 8. Furthermore, White, who has worked for ICE for over 20 years, acknowledged that she is not aware of any instances in which Australia or Romania has accepted a third-country removal from the United States, let alone any instances in which Australia or Romania has accepted such a removal of an Iranian national. White further acknowledged that

16

she was not aware of any instances over the course of her career when there was a removal to Australia or Romania of an individual who had absolutely no ties to that country. Such facts are significant because removal to a third country requires the affirmative assent of that country. *See* 8 U.S.C. § 1231(b)(2)(E)(vii) (authorizing removal, when removal to a country with which the noncitizen has specific ties is "impracticable, inadvisable, or impossible," to a "country whose government will accept the alien into that country").

More specifically, White testified that ICE has received no response from Australia or Romania to the Forms I-241 relating to Zavvar, which were sent more than two months ago. Notably, White acknowledged that although ICE typically sends follow-up inquiries after 30 to 45 days, she has no information showing that ICE has sent any such inquiries, or that it has taken any additional steps to effectuate the removal of Zavvar to Australia, Romania, or any other country. Consistent with this testimony, Zavvar has submitted media accounts, unchallenged by Respondents, reporting that Australian government officials have disavowed any knowledge of the request to accept Zavvar and instead have stated that there is no new agreement for the transfer of United States immigration detainees to Australia. *See* Pet. Hr'g Exs. 2–3, ECF Nos. 24-2, 24-3. The lack of any sign that Australia or Romania is actively considering accepting Zavvar further demonstrates that removal is not likely in the foreseeable future. *Cf. Medina*, 2025 WL 2306274, at \*9–10 (relying on the Government's representation that the petitioner's "case is under current review by El Salvador for the issuance of a travel document," as memorialized in a form submitted to the Court). Indeed, at the hearing, Respondents could not point the Court to any evidence that Zavvar's removal to one of those countries is reasonably foreseeable.

Finally, as stated at the hearing, Zavvar filed a Motion to Reopen proceedings in the Immigration Court on August 6, 2025, to which the Government has not responded. Where Zavvar

17

asserts that he will seek withholding of removal from Australia and Romania, and also cancellation of removal, there appear to be bases upon which Zavvar can legitimately seek to contest his removal in that court. *See* 8 U.S.C. § 1231(b)(3) (providing that "the Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion"); 8 C.F.R. § 1208.16 (providing for withholding of removal pursuant to 8 U.S.C. § 1231(b)(3)); 8 U.S.C. § 1229b (providing for cancellation of removal of certain permanent residents who meet certain criteria); *see also Andriasian v. INS*, 180 F.3d 1033, 1041 (9th Cir. 1999) (noting that failing to notify "individuals who are subject to deportation" of the right to apply for "withholding of deportation to the country to which they will be deported" violates due process and INA regulations). The fact that Zavvar likely will have the opportunity to seek further relief from the Immigration Court, and then potentially file appeals from any adverse rulings, further demonstrates that removal is not likely in the reasonably foreseeable future. *See Munoz-Saucedo*, 2025 WL 1750346, at *7 (finding relevant to the reasonably foreseeable analysis the fact that "even if ICE identified a third country, Petitioner . . . would be entitled 'to seek fear-based relief from removal to that country,' which would require 'additional, lengthy proceedings'").

Notably, on the basis of comparable evidence, several district courts have concluded that other similarly situated noncitizens had demonstrated that their removal was not reasonably foreseeable. *See, e.g.*, *id.* at *6–7 (as to a noncitizen with withholding of removal status who was detained after over two years on release, granting a petition where the Court found that there was no significantly likelihood of removal in the reasonably foreseeable future because he cannot be removed to his country of origin, ICE has historically low success rates in removing similar

18

individuals, and multiple requests to other countries to accept a third-country removal were denied); *Tadros*, 2025 WL 1678501, at *3 (as to a noncitizen with CAT deferral of removal status who was detained after 16 years on release, granting a petition where the Court found that there was no significant likelihood of removal in the reasonably foreseeable future because the Government had been unable to secure a third-country removal for 15 years, and the only evidence of ongoing efforts to remove him was a general statement that such efforts are being made); *Ruiz Primero*, 2025 WL 1899115, at *5 (finding that there was no significant likelihood of removal in the reasonably foreseeable future where the petitioner had deferred action status that had not been terminated).

In summary, even recognizing the greater immigration-related expertise of the Executive Branch, where the Court has found that, on this record, Zavvar has established that there is no significant likelihood that he will be removed in the reasonably foreseeable future, the Court concludes that his detention is not authorized by 8 U.S.C. § 1231(a)(6) and thus also violates due process. *See Zadvydas*, 533 U.S. at 692, 699–700. Accordingly, the Petition will be granted.

## CONCLUSION

For the foregoing reasons, the Petition for a Writ of Habeas Corpus will be GRANTED IN PART and STAYED IN PART. A separate Order shall issue.

Date:  September 8, 2025

THEODORE D. CHUANG
United States District Judge

19